IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TONY SEABOLT, | ) Civil Action No. 3:05-2853-PMD-JRM |
| Plaintiff, | ) |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB on November 28, 2001.[1] Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on December 1, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated August 20, 2004, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-nine years old at the time he alleges he became disabled and forty-four years old at the time of the ALJ's decision. He has a tenth-grade education and past relevant work

---

[1]Plaintiff filed a prior application for DIB on December 10, 1997, which was denied on May 26, 1999. That decision was not appealed by Plaintiff. As a general rule, the Federal Courts do not have jurisdiction to review a decision by the Commissioner to reopen a prior application. Califano v. Sanders, 430 U.S. 99, 107-108 (1977).

as a machinist. Plaintiff alleges disability since May 27, 1999, due to low back pain and right leg numbness.

The ALJ found (Tr. 25-26):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2002, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for work with restrictions which require lifting and carrying no more than 20 pounds, occasionally, or more than 10 pounds frequently; sitting for up to six hours in an 8-hour day; standing/walking for up to six hours in an 8-hour day; a sit/stand option; no pushing/pulling of foot controls with the lower extremities; occasional balancing, kneeling, crouching and stooping; no climbing or crawling; and occasional overhead reaching with the upper extremities. He has no mental impairments.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).

11. The issue of transferability of work skills is not material.

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

13. Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.17 and 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a production tester and as an assembler.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2002 (20 CFR §§ 404.1520(g) and 416.920(g).

On August 5, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on October 4, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and <u>Blalock v. Richardson</u>, supra.

## **DISCUSSION**

Plaintiff injured his back at work in August 1996. An MRI revealed a herniated disc at L4-5. Dr. Alfred Nelson, Jr., a neurosurgeon, performed a hemilaminectomy and discectomy on August 26, 1996. Tr. 122-160. Plaintiff reported that his pain improved following surgery, but he still had low back pain and occasional pain radiating down his right leg. Tr. 168, 172, 174. In November 1996, Dr. Nelson released Plaintiff to work part-time, four hours per day, on light duty. Tr. 172.

Plaintiff underwent a second back surgery in February 1997, to remove a small residual piece of disc fragment. Tr. 161-162, 172. Dr. Nelson noted that the "nerve root was quite free at surgery," and thought that Plaintiff's pain should diminish over time. Tr. 171. In May 1997, Dr. Nelson noted that Plaintiff had reached maximum medical improvement, assigned him a twenty-five percent impairment of the spine, recommended that Plaintiff continue physical therapy for one more week, lift no more than twenty-five pounds, and not sit or stand for prolonged periods. Tr. 170.

In August 1997, myelogram and CT scans showed a two-level disc bulge and degeneration at the L4-5 and L5-S1 levels. Tr. 164, 166. Dr. Glenn Trent, a spinal specialist, noted that Plaintiff weighed 265 pounds and thought that Plaintiff had the alternatives of losing about sixty pounds and then considering fusion surgery or living what he had. Dr. Trent opined:

> At this point in time, I do not see him returning to any heavy duty type occupation, only fit for light duty work, sedentary maybe at best, and I'll see him on a prn basis. At this point in time, do not think fusion is indicated secondary to multiple leve[l] disc degeneration and weight.

Tr. 164.

In September 1997, Dr. Nelson noted that Plaintiff was able to tolerate four hours of work a day, but was quite uncomfortable. Plaintiff returned in October 1997, at which time Dr. Nelson stated that Plaintiff could work four hours a day, but just barely, and that Plaintiff might very well be a candidate for disability. He noted that Plaintiff had really tried hard "to push forward despite his pain." In November 1997, Dr. Nelson stated that Plaintiff was just barely making it through work and had to take a lot of Darvocet which made him quite groggy. Dr. Nelson wrote that he did not think Plaintiff could continue to work, they were going to keep him out of work, and he thought it was reasonable for Plaintiff to apply for disability. Tr. 168.

Plaintiff sought no further treatment from Dr. Nelson and sought treatment only from his family practitioner, Dr. David Bridges. Tr. 182-188, see Tr. 265-66, 276. Dr. Bridges agreed to refill Plaintiff's pain medications and monitor Plaintiff's use of narcotics. Tr. 187. Although Dr. Bridges provided ongoing medication refills, there are records of only seven actual in-office visits from October 1998 to November 2003, of which only three visits appear to be for back-related complaints. Plaintiff was examined by Dr. Melissa Richardson in March 2002, at the request of the Commissioner. Tr. 189-192. Plaintiff reported that his leg pain resolved after surgery, but he still had back pain, left ankle pain, and right leg numbness. Physical examination revealed full upper body strength in all muscle groups; excellent range of motion in his upper extremities; no upper spinal tenderness; no evidence of muscle asymmetry or atrophy in the lower extremities, which were muscular; tenderness at his left ankle, right buttock, and surgical incision; diminished manual muscle testing values in his lower extremities; no edema; lumbar forward flexion to thirty degrees and extension to ten degrees; gait with a decreased stance on the left leg; diminished sensation in the

right lower extremity; and absent deep tendon reflexes at the ankles and knees. Tr. 190-191. Dr. Richardson opined:

> Overall impression of this patient would be that his primary limiting factor seems to be pain and deconditioning. I do not know if he would be a good candidate for any type of pain management program. He does not appear to be motivated. He does not, however, appear to be depressed. Most likely, he would be best suited for a light duty type of a job.

Tr. 191.

On March 2002, a State agency physician reviewed all of the evidence and completed a physical residual functional capacity ("RFC") assessment for Plaintiff. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk or sit about six hours in an eight-hour workday; occasionally climb and stoop; and frequently balance, kneel, crouch, and crawl. This physician noted that Plaintiff's symptoms appeared credible. Tr. 197-204.

In October 2002, Dr. William Crosby, III, a State agency physician, reviewed the medical evidence and opined that Plaintiff's obesity and musculoskeletal pain were severe as of his date last insured (December 31, 2002). Dr. Crosby also agreed with the first State agency physician regarding Plaintiff's RFC.

In November 2003, a spinal MRI revealed a recurrent disc extrusion at L4-5. Tr. 205-206, 208. On November 25, 2003, Dr. Bridges wrote that he agreed with Dr. Nelson's prior assessment that Plaintiff was disabled due to back pain and obesity. Tr. 207.

In January 2004, Dr. Bret Warner, a neurologist, examined Plaintiff. Mental status examination was normal. Physical examination revealed normal motor strength, bulk, and tone; no drift or extraneous movement in the upper extremities; intact deep tendon reflexes in the upper and lower extremities; slightly diminished ankle reflexes without activation of the upper extremity;

subjectively slight diminished sensation in the right lower extremity; and a normal gait. Dr. Warner noted that most of Plaintiff's limitations were from low back pain and that from a neurological standpoint, Plaintiff did not seem to have any significant abnormalities. Tr. 215-217. Spinal MRIs in January 2004 showed degenerative changes and a mild centrally bulged disc at the L4-5 level. Tr. 217-218. In February 2004, Dr. Warner completed a medical source statement, in which he opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk about six hours in an eight-hour workday; had to periodically alternate between sitting and standing to relieve pain; had unlimited ability to push/pull with his lower extremities; could occasionally balance, kneel, crouch, and stoop; could never climb or crawl; and could only occasionally reach. Tr. 219-221.

At the hearing before the ALJ, Plaintiff testified that he had back pain, numbness in his right leg, and left ankle problems. Tr. 262-263, 266. He stated that he was never pain free and had worn a non-prescribed back brace because he outgrew his prescribed one. Tr. 272, 280, 285. Plaintiff took Darvocet and Oxycontin for pain, which he claimed provided little relief and caused drowsiness, dizziness, nausea, and diarrhea. Tr. 264-265, 269, 273-273. He testified that he had started taking Xanax for depression three months prior to the hearing. Tr. 271-272, 286.

Plaintiff testified that he continuously reclined, with ice packs and a TENS unit. Tr. 265, 368-369, 285. He stated that he went to church on Sundays, but could not remain seated during the entire service due to pain. Tr. 269. Plaintiff drove about two times a week, sometimes grocery shopped, sometimes loaded the clothes washer, seldom cooked or washed dishes, and never vacuumed or mopped. Tr. 269-272, 278-279. He testified that he could not sit or stand for more than five to ten minutes and could not lift anything heavier than his six-month old grandchild. Tr.

272-273. Plaintiff submitted letters from lay witnesses, including his pastor, his parents, his wife, and a friend. Tr. 102-106.

At the hearing, a VE testified that Plaintiff's past relevant work, which was normally light, semi-skilled work, had been heavy to very heavy work as Plaintiff performed it. Tr. 287. On April 6, 2004, the ALJ reopened the record and obtained additional VE information, through the use of interrogatories, following the results of Dr. Warner's consultative examination. Tr. 286, 288-289. The ALJ asked the ALJ to assume a claimant of Plaintiff's age, educational background, and past work experience who had:

> impairments that include being status-post lumbar surgery times two, multilevel degenerative disc disease, and obesity. Subjectively, he complains of pain in the low back radiating into the lower extremities, a limited ability to sit, stand, and walk, depression, ankle pain, dizziness, nausea, drowsiness, and crying spells. You will assume that the claimant's objective impairments and subjective complaint, in combination, reduces his residual functional capacity but allows the exertional and non-exertional ability to lift and carry 20 pounds occasionally, 10 pounds frequently; sit six hours and stand/walk six hours each in an eight-hour day. He does not require an assistive device. Such individual would be limited to only occasional climbing, stooping, kneeling and could frequently balance, crouch and crawl. The potential of side effects from medication precludes working around height or dangerous moving machinery.

Tr. 117-118. The VE identified the jobs of production testers and assemblers which he believed such a claimant could perform. The ALJ asked the VE to further consider an individual with the same vocational profile as above who was also:

> limited to work with restrictions that required lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting six hours and standing/walking six hours each in an eight hour-day; with a sit/stand option; involving no pushing/pulling of foot controls with the lower extremities; occasional balancing, kneeling, crouching and stooping but never climbing or crawling; and only occasional overhead reaching with the upper extremities.

Tr. 118. In response, the VE stated that such a claimant would likely be able to perform fifty percent of the jobs identified provided the sit/stand option allowed the worker to be in one position or the other for at least forty-five minutes at a time before changing positions. Tr. 118.

Plaintiff alleges that: (1) the ALJ failed to properly evaluate Plaintiff's pain and (2) the ALJ failed to properly evaluate Plaintiff's remaining RFC. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

  A.  <u>Substantial Evidence/Residual Functional Capacity</u>

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. In particular, he alleges that the ALJ failed to properly determine his RFC.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

Plaintiff claims that the ALJ failed to properly evaluate his RFC because the ALJ did not make any analysis of his RFC, but merely adopted the RFC from his prior application for DIB benefits, the file of which is not available. He also claims that the ALJ failed to properly consider Dr. Trent's opinion that he might be restricted to sedentary work, failed to properly consider the effects of his obesity in combination with his other impairments on his ability to work, failed to

consider all of the limitations found by Dr. Warner, and failed to specify the frequency of his required stand/sit option.[2]

It is unclear from the ALJ's opinion how he determined Plaintiff's RFC. The ALJ merely recited the RFC found by the prior ALJ as to Plaintiff's prior application for DIB and stated that:

> There is no evidence of any substantial change in the claimant's condition after Judge DeBerry's decision was issued in May 1999 through, at least, February 31, 2002, when the claimant was last insured for Disability Insurance Benefits.

Tr. 23. First, Plaintiff was insured through December 31, 2002, not February 31, 2002, and it is unclear whether this error would have any effect on the ALJ's determination. Although the ALJ must consider a prior determination (see AR 00-1(4)) and Judge DeBerry's decision is part of the record, the record as to that decision was lost and this decision does not appear to have all of the exhibits discussed by Judge DeBerry, making it difficult to determine whether there was any substantial change in Plaintiff's condition since that prior decision. It is also unclear what weight, if any, the ALJ placed on Dr. Trent's opinion that Plaintiff was only fit for "maybe sedentary at best" work. Tr. 164. The ALJ appears to have taken numerous restrictions of Dr. Warner into account in determining Plaintiff's RFC, but he does not specifically discuss this. Further, if that is the case, it is unclear why the ALJ disregarded Dr. Warner's restriction that Plaintiff could do only occasional reaching.[3] Finally, it is unclear from the decision whether the ALJ specifically considered the effects of Plaintiff's obesity on his other impairments. See SSR 02-1p.

---

[2]Plaintiff appears to be referring to SSR 96-9p, which requires that an ALJ specify the frequency with which a claimant needs to alternate positions. This requirement, however, applies to sedentary work.

[3]Plaintiff contends that the jobs identified by the VE all require frequent reaching.

10

B.     Pain

Plaintiff alleges that the ALJ failed to properly evaluate his complaints of pain. In particular, he claims that the factors used by the ALJ to discredit him are not supported by substantial evidence, the ALJ failed to consider probative evidence of his pain, his complaints of pain are supported by the records of the treating and examining physicians, the ALJ failed to consider the side-effects of his medicine, and the ALJ failed to consider reports and observations of lay witnesses.

The Commissioner contends that the ALJ properly evaluated Plaintiff's pain and any failure to consider evidence was harmless error.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ's credibility determination is not supported by substantial evidence. The ALJ

wrote:

> Considering the absence of treatment by a mental health professional; the absence of specifically indicated symptoms of depression or anxiety; the lack of alternative treatment modalities since 1998, other than narcotic pain medication; the absence of muscle atrophy in the claimant's right leg despite complaints of chronic pain, numbness and giving away in that leg for eight years; the specific functional restrictions indicated by Drs. Nelson and Trent; and treating physicians' expressed opinions of "disability" notwithstanding, I do not find the allegations of chronic pain and disabling functional capacity to be credible.

Tr. 23.

Although Plaintiff's lack of mental health treatment is certainly relevant to the question of whether he had a severe mental impairment, it is unclear why Plaintiff is not credible because he did not seek treatment from a mental health professional. Plaintiff claimed in his disability application that he was disabled because of low back pain and numbness in his right leg below knee (Tr. 75), not because of a mental impairment. Plaintiff testified that he suffered from depression and crying spells and was taking Xanax. Dr. Bridge's notes, however, indicate that Xanax was prescribed for Plaintiff's anxiety and depression. Tr. 211.

Although the ALJ discredited Plaintiff for a lack of alternative treatment modalities since 1998 other than narcotic medications, Plaintiff used a TENS unit and ice to relieve pain and testified that he had recently been prescribed steroids for his condition. See Tr. 189, 263, 280. Plaintiff previously had two back surgeries and in the past participated in physical therapy and work hardening. Tr. 122, 161, 170. It is also unclear how the specific functional restrictions of Dr. Nelson, who opined that Plaintiff was totally disabled,[4] and those of Dr. Trent, who opined that

---

[4]Plaintiff also testified that Dr. Nelson restricted him to lifting ten pounds. Tr. 271.

Plaintiff was "only fit for light duty work, sedentary maybe at best" (Tr. 164) indicate that Plaintiff was not credible.

The Commissioner also contends that Plaintiff was not credible based on his activities of daily living, but this does not appear to have been a consideration of the ALJ.  This action should be remanded to the Commissioner to consider Plaintiff's credibility in light of applicable law and all of the evidence, including the medical evidence, the side effects of Plaintiff's medication, and the non-medical evidence.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence.  This action should be remanded to the Commissioner to properly evaluate Plaintiff's residual functional capacity and credibility.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 28, 2007
Columbia, South Carolina

13