IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| TONY SEABOLT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 3:05-2853-PMD-JRM |
| v. ) | |
| ) | |
| JO ANN B. BARNHART, Commissioner ) | **ORDER** |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of Social Security's final decision denying Tony Seabolt's ("Seabolt" or "Plaintiff") claim for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be reversed and the case remanded to the Commissioner for further administrative action. The Commissioner timely objected to the Magistrate Judge's recommendation.

**BACKGROUND**

**A.     Administrative Proceedings**

Plaintiff applied for DIB on November 28, 2001.[1] After Plaintiff's application was initially denied and denied on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). After a hearing on December 1, 2003, the ALJ denied benefits in a decision dated August

---

[1] As the Magistrate Judge noted, Plaintiff previously filed an application for DIB on December 10, 1997, which was denied on May 26, 1999. Plaintiff did not appeal that decision.

1

20, 2004. Based on the testimony of a vocational expert ("VE"), the ALJ determined that work existed in the national economy that Plaintiff was able to perform.

Plaintiff, thirty-nine years old at the time he alleges he became disabled and forty-four years old at the time of the ALJ's decision, has a tenth-grade education and past relevant work experience as a machinist. He alleges disability since May 27, 1999 due to low back pain and right leg numbness. The ALJ, in his decision dated August 20, 2004, found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2002, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for work with restrictions which require lifting and carrying no more than 20 pounds, occasionally, or more than 10 pounds frequently; sitting for up [to] six hours in an 8-hour day; standing/walking for up to six hours in an 8-hour day; a sit/stand option; no pushing/pulling of foot controls with the lower extremities; occasional balancing, kneeling, crouching and stooping; no climbing or crawling; and occasional overhead reaching with the upper extremities. He has no mental impairments.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

> 9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).
>
> 10. The claimant has a "limited" education (20 CFR §§ 404.1564 and 416.964).
>
> 11. The issue of transferability of work skills is not material.
>
> 12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).
>
> 13. Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.17 and 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a production tester and as an assembler.
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2002 (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 25-26.) When the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final action of the Commissioner. Plaintiff filed suit in this court on October 4, 2005 pursuant to 42 U.S.C. § 405(g). The Magistrate Judge issued an R&R on February 28, 2007, recommending that the Commissioner's final decision be reversed and remanded for further administrative action. The Commissioner filed timely objections, asserting the Magistrate Judge erred in finding that the Commissioner's decision was not supported by substantial evidence.

**B.    Medical Evidence in Record**

Plaintiff injured his back at work in August 1996. After an MRI revealed a large herniated disk at L4-5, Dr. Alfred Nelson, Jr., a neurosurgeon, performed a hemilaminectomy and diskectomy on August 26, 1996. (Tr. 122-60.) Although Plaintiff reported that his pain improved after surgery, he still had pain in his lower back and right leg. (Tr. 168, 174.) Dr. Nelson released Plaintiff to work four hours per day in November of 1996. (Tr. 172.)

Plaintiff continued to suffer from back pain, and on February 5, 1997, he underwent a second

surgery, this time to remove a small residual piece of disc fragment under the nerve root. (Tr. 161.) Later that month, Dr. Nelson's notes reveal Plaintiff was suffering from numbness in his leg and occasional shooting pain. (Tr. 171.) Dr. Nelson's notes from February state, "The nerve root was quite free at surgery, and I've told him we are going to simply have to wait for this to get better." (Tr. 171.) In May of 1997, Plaintiff again returned to Dr. Nelson with pain in his lower back. Dr. Nelson indicated Plaintiff had reached the "maximum medical improvement with 25% impairment to the spine." (Tr. 170.) Dr. Nelson indicated that following another week of physical therapy, Plaintiff would be released to work which did not require him to lift more than twenty-five pounds or sit or stand for prolonged periods of time. (Tr. 170.)

Plaintiff was referred to Dr. Glenn Trent, a spine specialist, after the second surgery did not improve his pain. (Tr. 165.) Dr. Trent ordered a myelogram and CT scan in order to compare it with the MRI. (Tr. 165.) In August of 1997, Dr. Trent stated the myelogram and CT scan revealed "the 2 level disc bulge, degeneration at 4-5, 5-1" but that he did not see significant stenosis. (Tr. 164.) He noted Plaintiff had two alternatives: (1) losing sixty pounds, then considering fusion surgery, or (2) living with the pain. (Tr. 164.) Dr. Trent opined that he did not see Plaintiff "returning to any heavy duty type occupation" but that Plaintiff was "only fit for light duty work, sedentary maybe at best." (Tr. 164.)

Plaintiff returned to Dr. Nelson on August 15, 1997, and Dr. Nelson's notes indicate Plaintiff complained of worsening pain in his back. (Tr. 169.) The notes further indicate Dr. Nelson kept Plaintiff at the four-hour workday restriction. (Tr. 169.) In October 1997, Dr. Nelson noted Plaintiff complained of worsening back pain but that neither Dr. Nelson nor Dr. Trent had any further suggestions. (Tr. 168.) Dr. Nelson's notes state, "I've encouraged [Plaintiff] to continue four hours

4

a day, but because of this level of pain, he may very well be a candidate for disability. He has really tried as hard as he can I feel, to push forward despite the pain." (Tr. 168.) By November of 1997, Dr. Nelson indicated Plaintiff told him he could "just barely" make it through the four hours of work per day, and Dr. Nelson decided to keep him out of work. (Tr. 168.) Plaintiff's last visit to Dr. Nelson was on January 6, 1998; the notes from this visit indicate Plaintiff still suffered from low back pain and that Plaintiff was applying for disability. (Tr. 167.)

Plaintiff thereafter sought treatment from his family practitioner, Dr. David Bridges, who agreed to refill Plaintiff's pain medications and monitor Plaintiff's use of narcotics. (Tr. 187.) While Dr. Bridges provided ongoing medication refills, there are records of only seven office visits from October 1998 to November 2003, of which only three visits appear to be for back-related complaints.

Dr. Melissa Richardson examined Plaintiff in March of 2002 at the Commissioner's request. (Tr. 189-92.) Dr. Richardson's examination revealed the following: no evidence of muscle asymmetry or atrophy; excellent range of motion of the shoulders, elbows, wrists and hands; some tenderness over the incision and some associated tenderness into the right buttock region; diminished manual muscle testing values as a result of pain; forward flexion of the lumbar spine at a maximum of thirty degrees as a result of pain; gait with a decreased stance space on the left leg; and diminished sensation in the right lower extremity. (Tr. 190-91.) The "Impression" section of her opinion states,

> Overall impression of this patient would be that his primary limiting factor seems to be pain and deconditioning. I do not know if he would be a good candidate for any type of pain management program. He does not appear to be motivated. He does not, however, appear to be depressed. Most likely, he would be best suited for a light duty type of a job.

5

(Tr. 191.)

Also in March of 2002 a State agency physician completed a residual functional capacity ("RFC") assessment for Plaintiff. According to this physician, Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, push and pull without limitation, and occasionally climb and stoop. (Tr. 198-99.) The physician stated that Plaintiff's symptoms appeared credible and limited Plaintiff to light work. (Tr. 198, 202.) Dr. William Crosby also reviewed the evidence and agreed with the State agency physician's RFC assessment. (Tr. 204.)

A November 2003 MRI revealed a posterior disc extrusion at L4-5 centrally, paracentrally, and into the right lateral recess. (Tr. 205.) In a letter dated November 23, 2003, Dr. Bridges stated that he agreed with Dr. Nelson's assessment that Plaintiff was disabled due to his obesity and long history of back pain. (Tr. 207.)

In January of 2004, Dr. Bret Warner, a neurologist, examined Plaintiff. The "Impression" section of his notes states,

> 44-year old gentleman who is primarily complaining of back pain for the past several years and residual numbness in the right lower extremity. Overall his neurological examination is not that remarkable. He has subjective decreased sensation distally in the right lower extremity. Most of the limitations on either examination or from his complaints deal with low back pain. From a neurological standpoint he does not seem to have any significant abnormalities.

(Tr. 216.) A January 2004 MRI revealed degenerative changes and "moderately severe narrowing at the L4/5 and moderate narrowing at the L5/S1 disc spaces." (Tr. 217.) Dr. Warner completed a medical source statement in February 2004, in which he indicated the following: Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand about six hours in an eight-hour workday. (Tr. 219.) He opined that Plaintiff must periodically alternate between sitting and

6

standing in order to relieve pain or discomfort and that Plaintiff's impairment limited his ability to push or pull in lower extremities. (Tr. 220.) Dr. Warner further indicated Plaintiff could never climb or crawl but that he could occasionally balance, kneel, crouch, or stoop. (Tr. 220.) The statement also indicates Plaintiff's ability to reach is limited as a result of his lower back pain. (Tr. 221.)

### C.     Testimony at Hearing

Plaintiff testified at the December 1, 2003 hearing. He stated that he had back pain, numbness in his right leg, and pain in his left ankle because it takes most of the pressure of walking. (Tr. 262-63.) He testified that 99% of the time, his pain was a nine on a scale of one to ten; however, when laying down, his pain is an eight. (Tr. 265.) Plaintiff states that if he is at home, he is either laying down in the bed or in the recliner, continuously using ice packs to relieve the pain. (Tr. 265.) He stated he took Darvocet and OxyContin for the pain, which he testified afforded him little relief and gave him nausea and diarrhea and made him drowsy and dizzy. (Tr. 263-64, 274.) Plaintiff was also on Xanax, which he started taking for depression approximately three months prior to the hearing. (Tr. 271, 286.) He wears a non-prescribed back brace because he outgrew the prescribed one. (Tr. 285.)

When asked about his social activities, Plaintiff answered that he went to church on Sundays but was unable sit through the entire service. (Tr. 269.) He stated he was able to attend services by "[r]epeatedly getting up and down[, being d]rugged on pain pills and electric shock and back braces." (Tr. 269.) He indicated that when he went to the grocery store with his wife, he would not be able to walk through the store "without riding a buggy or holding onto a buggy." (Tr. 269.) He also stated that he drives about twice a week and occasionally puts clothes in the washing machine.

(Tr. 278-79.) He stated that he cooks and washes dishes about once a month but never folds clothes, vacuums, dusts, or mops. (Tr. 279.) Plaintiff indicated he could stand or sit for about five minutes at a time and the heaviest thing he could lift was his six month old granddaughter. (Tr. 272-73.)

The VE testified that Plaintiff's past relevant work, which was normally light work performed at the semi-skilled level, was heavy to very heavy. (Tr. 287.) The ALJ reopened the record and obtained additional evidence from the VE in the form of interrogatories following Dr. Warner's consultation. The interrogatories stated,

> Assume a 44-year old individual with a 10th grade education and past work experience as [a machinist]. Assume further that the claimant has impairments that include being status-post lumbar surgery times two, multilevel degenerative disc disease, and obesity. Subjectively, he complains of pain in the low back radiating into the lower extremities, a limited ability to sit, stand, and walk, depression, ankle pain, dizziness, nausea, drowsiness, and crying spells. You will assume that the claimant's objective impairments and subjective complaints, in combination, reduces his residual functional capacity but allows the exertional and non-exertional ability to lift and carry 20 pounds occasionally, 10 pounds frequently; sit six hours and stand/walk six hours each in an eight-hour day. He does not require an assistive device. Such individual would be limited to only occasional climbing, stooping, kneeling and could frequently balance, crouch and crawl. The potential of side effects from medication precludes working around height or dangerous moving machinery.

(Tr. 117-18.) While the VE opined that Plaintiff could not return to his relevant past work as a machinist, the VE indicated Plaintiff could perform the job of a production tester or assembler. (Tr. 118.) The ALJ then asked the VE what jobs would be available to an individual

> who was limited to work with restrictions that required lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting six hours and standing/walking six hours each in an eight-hour day; with a sit/stand option; involving no pushing/pulling of foot controls with the lower extremities; occasional balancing, kneeling, crouching and stooping but never climbing or crawling; and only occasional overhead reaching with the upper extremities.

(Tr. 118.) The VE indicated such an individual would likely be able to perform fifty percent of the

production tester or assembler jobs, provided the sit/stand option allowed the worker to be in one position or the other for at least forty-five minutes before changing positions. (Tr. 118.)

The ALJ also asked the VE the following:

> [A]ssume that I find the claimant's allegations credible to the effect that he would be precluded from lifting/carrying no more than 10 pounds frequently/occasionally; would need a sit/stand option occurring every 10-15 minutes; and could stand/walk a total of two hours in an eight-hour day. Would there be any jobs in the local and national economy that such an individual could perform, considering his vocational profile?

(Tr. 119.) The VE indicated no such jobs were available. (Tr. 119.)

### D.    Magistrate Judge's R&R

In the R&R, Magistrate Judge McCrorey recommended that the Commissioner's decision be reversed and the case be remanded for further administrative action. (R&R at 13.) Specifically, the Magistrate Judge found the ALJ failed to properly evaluate Plaintiff's remaining RFC, stating, "It is unclear from the ALJ's opinion how he determined Plaintiff's RFC." (R&R at 10.) Furthermore, the Magistrate Judge found the ALJ's determination on Plaintiff's credibility was not supported by substantial evidence. (R&R at 11.)

## STANDARD OF REVIEW

### A.    Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and the Commissioner's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

**B.     Judicial Review Under Social Security Act**

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## **ANALYSIS**

**A.     Residual Functional Capacity**

In his decision dated August 20, 2004, the ALJ described Plaintiff's RFC:

> In his decision, [the first ALJ] Judge DeBerry found that the claimant had the residual functional capacity for work except for lifting and carrying more than 20 pounds occasionally and 10 pounds frequently, sitting, standing and/or walking for more than 6 hours in an 8-hour shift, engaging in more than occasional climbing, balancing and stooping or more than frequent kneeling, crouching or crawling.
>
> There is no evidence of any substantial change in the claimant's condition

>   after Judge DeBerry's decision was issued in May 1999 through, at least, February 31 [sic], 2002, when the claimant was last insured for Disability Insurance Benefits. Judge DeBerry's decision is supported by substantial evidence thoroughly discussed in his decision, and I give it considerable weight.
>
>   Accordingly, I find that the claimant has the residual functional capacity for work with restrictions which require lifting and carrying no more than 20 pounds, occasionally, or more than 10 pounds frequently; sitting for up [to] six hours in an 8-hour day; standing/walking for up to six hours in an 8-hour day; a sit/stand option; no pushing/pulling of foot controls with the lower extremities; occasional balancing, kneeling, crouching and stooping; no climbing or crawling; and occasional overhead reaching with the upper extremities.

(Tr. 23.)

As previously noted, the Magistrate Judge found the ALJ failed to properly evaluate the RFC, stating it was unclear how the ALJ determined Plaintiff's RFC. (R&R at 10.) The Magistrate Judge listed several factors that produced this lack of clarity:

>   (1) The ALJ recited the RFC found by the prior ALJ for the prior DIB application and stated there was no substantial change in Plaintiff's condition between the issuance of that decision and February [28], 2002. The Magistrate Judge noted Plaintiff was insured through December 31, 2002, not February 28, and that it was thus unclear whether this error would have any effect on the ALJ's determination.
>
>   (2) Although the ALJ must consider the prior determination, the record as to that decision was lost "and this decision does not appear to have all of the exhibits discussed by [the first ALJ], making it difficult to determine whether there was any substantial change in Plaintiff's condition since that prior decision." (R&R at 10.)
>
>   (3) It is unclear what weight, if any, the ALJ placed on Dr. Trent's opinion that Plaintiff was fit for sedentary work at best.
>
>   (4) While the ALJ appears to have taken many restrictions of Dr. Warner's into account in determining Plaintiff's RFC, the ALJ does not discuss this, nor is it clear why the ALJ disregarded Dr. Warner's restriction that Plaintiff could do only occasional reaching.
>
>   (5) It is unclear whether the ALJ specifically considered the effects of Plaintiff's obesity on other impairments.

(*See* R&R at 10.)

11

The Commissioner objects to this determination, stating that "while the ALJ did not adopt any one doctor's restrictions entirely in assessing Plaintiff's residual functional capacity, he thoroughly considered the medical opinions and other evidence of record, and imposed those limitations that he found were consistent with the record as a whole." (Objections at 1.) The Commissioner also argues that the "ALJ's failure to cite specific evidence does not indicate it was not considered" and that "there was nothing to indicate that [the ALJ] did not properly consider" the effect of Plaintiff's obesity on his other impairments. (Objections at 2-3.) The Commissioner says nothing of the ALJ's reference to the wrong date or the missing record.

The court agrees with the Magistrate Judge that the ALJ's RFC determination is not supported by substantial evidence. First, Plaintiff was insured for benefits through December 31, 2002. The ALJ stated that he considered changes in Plaintiff's condition from the issuance of the first ALJ's order to the end of February 2002. The court is unsure whether the ALJ's determination would have been different had he considered the changes in Plaintiff's medical condition through December 2002. The Commissioner is charged with determining the existence of a disability, and to qualify for Disability Insurance Benefits, Plaintiff must show that he became disabled prior to the expiration of his insured status. *See* 20 C.F.R. § 404.131(a); *see also Wilson v. Comm'r*, 161 F.3d 5, at *1 (4th Cir. 1998) (unpublished table decision); *Kasey v. Sullivan*, 3 F.3d 75, 77 n.3 (4th Cir. 1993) ("In order to receive disability insurance benefits, Kasey was required to establish a disability prior to the expiration of his insured status."). Ten months lapsed between the end of February and the end of December, and the court agrees with the Magistrate Judge that it is uncertain whether considering these additional ten months would have altered the ALJ's decision. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Given that the ALJ stated he did not consider these ten months in making his RFC determination, the court cannot say that substantial evidence supports the ALJ's RFC determination and that the ALJ applied the correct principles of law.

Furthermore, the Magistrate Judge stated it is unclear how the ALJ determined Plaintiff's RFC because of the ALJ's reliance on Judge DeBerry's decision. Specifically, while Judge DeBerry's decision is part of the record, the record does not contain all of the exhibits Judge DeBerry discussed, "making it difficult to determine whether there was any substantial change in Plaintiff's condition since that prior decision." (R&R at 10.) In the 2004 decision, the ALJ stated that claimant's condition did not substantially change from the time of Judge DeBerry's decision. The ALJ further stated, "Judge DeBerry's decision is supported by substantial evidence thoroughly discussed in his decision, and I give it considerable weight." (Tr. 23.) Because the ALJ gave Judge DeBerry's decision heavy weight and stated that it was supported by substantial evidence, the court agrees with the Magistrate Judge that the missing record is problematic. The record simply does not allow the comparison the ALJ makes.

Because the record in the case *sub judice* does not contain the entire record from Judge DeBerry's decision, the court cannot say the ALJ's determination, finding no evidence of a substantial change in Plaintiff's condition since Judge DeBerry's decision, is supported by substantial evidence. *See Mink v. Apfel*, 215 F.3d 1320, at *2 (4th Cir. 2000) (unpublished table decision) ("An ALJ has a duty to fully and fairly develop the administrative record."); *Stanley v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 989 F.2d 494, at *3 (4th Cir. 1993)

13

(unpublished table decision) (stating that because the record did not disclose a doctor's credentials, it was unclear whether the ALJ could properly rely on the doctor's opinion (citing *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137-38 (7th Cir. 1988))); *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003) ("It is well understood that it is the ALJ's obligation to develop the record. . . . Moreover, evidentiary gaps that result in unfairness or clear prejudice require a remand."); *Harris v. Callahan*, 11 F. Supp. 2d 880, 886 (E.D. Tex. 1998) (noting substantial evidence did not support the ALJ's decision to apply res judicata because "[t]he record is deplete of any evidence upon which the ALJ's decision is based"); *cf. Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (noting that in *pro se* cases, an ALJ has a heightened duty to adequately develop the record).

The Magistrate Judge also stated that it was unclear whether the ALJ specifically considered the effects of Plaintiff's obesity on his other impairments when determining his RFC. (R&R at 10.) The Commissioner objects: "[T]he ALJ specifically considered Plaintiff's obesity, finding it was a severe impairment, and there was nothing to indicate that he did not properly consider its effects on other impairments." (Objections at 3 (quotation marks omitted).) "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether any such impairment if considered separately would be sufficiently severe." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (internal quotation marks omitted) (citing 42 U.S.C. § 423(d)(2)[(B)]; *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989)); *see also* 20 C.F.R. § 404.1523.

In the case *sub judice*, the ALJ found Plaintiff's multilevel degenerative disc disease and obesity to be severe impairments but not severe enough to meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19.) Aside from this one statement, and perhaps the fact that the ALJ was aware of Plaintiff's obesity, there is no evidence that the ALJ

considered Plaintiff's obesity in conjunction with his other impairments in determining his RFC. While the Commissioner argues nothing in the record indicates the ALJ did not properly consider the effects of Plaintiff's obesity on his other impairments, the court disagrees: the fact that the ALJ did not discuss it is evidence that he did not consider it. *See Fleming*, 284 F. Supp. 2d at 271 (noting the ALJ's determination of the plaintiff's RFC was "completely insufficient" where the ALJ made no mention of the obesity after stating it was a severe impairment); *cf. Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985) ("[W]e have held that in determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, the ALJ must consider the combined effect of all physical impairments, as well as the combined effect of all physical and mental impairments." (citations omitted)); *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("When a claimant has a number of impairments, the ALJ must consider their cumulative effect in making a disability determination. Sufficient consideration of the combined effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a plaintiff's complaints of pain and level of daily activities." (internal quotation marks and citations omitted)). The Commissioner's objection is thus without merit.

The Commissioner also objects to the Magistrate Judge finding the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not specifically discuss Dr. Trent's opinion that Plaintiff was fit for sedentary work at best and Dr. Warner's restriction that Plaintiff could do only occasional reaching. (Objections at 2.) The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence. *See Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) ("The courts . . . face a difficult task in applying the substantial evidence

15

test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty. . . . ); *Boston v. Barnhart*, 332 F. Supp. 2d 879, 889-90 (D. Md. 2004) (stating the court cannot determine whether the ALJ's RFC determination is supported by substantial evidence when the ALJ did not address the impact of the claimant's hospitalization on the RFC determination). The ALJ's failure to discuss certain aspects of Dr. Trent's and Dr. Warner's opinions may not have been erroneous. However, as the court is remanding the case on other grounds, the ALJ should indicate how this evidence factors into the RFC determination.

**B.      Credibility Determination**

In the R&R, Magistrate Judge McCrorey found the ALJ's determination of Plaintiff's credibility was not supported by substantial evidence. (R&R at 11.)[2] The ALJ found Plaintiff's

---

[2]The Fourth Circuit has clearly instructed that a claimant "need only 'show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged,'" and these complaints may not be rejected merely because the severity of pain cannot be proved by objective evidence. *Thompson v. Sullivan,* 980 F.2d 280, 282 (4th Cir. 1992) (quoting *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990)); *see Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (quoting 42 U.S.C. § 423(d)(5)(A)). Nonetheless, the court notes that subjective claims of pain need not be accepted to the extent they are inconsistent with the available medical and non-medical evidence. Such evidence includes: the use and effects of medications, the claimant's ability to perform daily activities, the consistency of the claimant's allegations, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. SSR 96-7p. Where the ALJ makes a determination regarding a claimant's credibility, the ALJ must adequately explain the reasons for the finding about the credibility of the individual's statements in the disability determination or decision. SSR 96-7p. If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro v. Apfel*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

allegations of pain not credible:

> Considering the absence of treatment by a mental health professional; the absence of specifically indicated symptoms of depression or anxiety; the lack of alternative treatment modalities since 1998, other than narcotic pain medication; the absence of muscle atrophy in the claimant's right leg despite complaints of chronic pain, numbness and giving []way in that leg for eight years; the specific functional restrictions indicated by Drs. Nelson and Trent; and treating physicians' expressed opinions of "disability" notwithstanding, I do not find the allegations of chronic pain and disabling functional capacity to be credible.

(Tr. 23.) The Magistrate Judge was troubled by the ALJ's reference to Plaintiff's mental health in assessing Plaintiff's credibility, noting "it is unclear why Plaintiff is not credible because he did not seek treatment from a mental health professional." (R&R at 12.) The Magistrate Judge further stated, "It is also unclear how the specific functional restrictions of Dr. Nelson, who opined that Plaintiff was totally disabled, and those of Dr. Trent, who opined that Plaintiff was only fit for light duty work, sedentary maybe at best[,] indicate that Plaintiff was not credible." (R&R at 12-13 (internal quotation marks omitted).)

The Commissioner objects, first arguing the lack of mental health treatment was a proper consideration in evaluating Plaintiff's allegations of a disabling mental impairment. (Objections at 3.) Although Plaintiff testified that he had crying spells and was taking Xanax for depression, there is no evidence the ALJ considered Plaintiff's mental health as an impairment. (Tr. 19, 271.) The Commissioner is correct that the ALJ can consider the lack of mental health treatment in determining whether a claimant suffers from a severe mental impairment. *See, e.g., Owens v. Barnhart*, 400 F. Supp. 2d 885, 891 (W.D. Va. 2005). Indeed, "in evaluating the intensity and extent of pain, consideration must be given to the medication and medical treatment a claimant receives to alleviate her symptoms as well as any other measures or 'home remedies' a claimant uses to relieve her symptoms." *Mickles*, 29 F.3d at 930 (Luttig, J., concurring) (citing 20 C.F.R. § 416.929(c)(3)(iv)-

(vi)). However, the Magistrate Judge expressed uncertainty as to why the ALJ considered Plaintiff's lack of mental health treatment relevant in assessing Plaintiff's credibility. The court agrees with the Magistrate Judge; while the fact that Plaintiff did not seek treatment from a mental health professional may have been relevant in determining Plaintiff's credibility with respect to an alleged mental impairment, his lack of mental treatment is not relevant in assessing his credibility with respect to a physical impairment.

The Commissioner also objects to the Magistrate Judge's determination that the ALJ improperly performed the credibility analysis because "it was reasonable for the ALJ to consider the general lack of functional limitations imposed by Plaintiff's physicians in finding that his limitations were not as severe as alleged." (Objections at 4.) The Commissioner alone is responsible for making the determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(1); *see also Baker*, 957 F. Supp. at 80 ("The final responsibility for deciding factual issues such as whether a claimant's impairments meet or equal the requirements of any impairments in the [Listing of Impairments] is reserved to the Commissioner. Further, a statement by a physician that a claimant is 'disabled' or 'unable to work' is not determinative of the claimant's disability status."). However, the ALJ's decision seems to indicate the specific functional restrictions indicated by Dr. Trent and Dr. Nelson negatively impact Plaintiff's credibility. Like the Magistrate Judge, the court is unsure how Dr. Nelson's decision to keep Plaintiff out of work and Dr. Trent's opinion that Plaintiff is fit for sedentary work at best indicate Plaintiff's allegations of chronic pain and disabling functional capacity are not credible. Furthermore, as the Magistrate Judge noted, while the ALJ found Plaintiff not credible because he had not sought treatment other than narcotic medication since 1998, Plaintiff used a TENs unit and ice to relieve pain, and he testified at the hearing he had recently been

prescribed steroids for his condition. (Tr. 189, 263, 280.) In addition, there is evidence in the record that further treatment may not improve Plaintiff's condition. (*See* Tr. 164, 168.) The court thus agrees with the Magistrate Judge's assessment that the ALJ's credibility determination is not supported by substantial evidence.

## **CONCLUSION**

After a careful examination of the record as a whole, the court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 26, 2007**